| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| IN RE: CAROL ALISON RAMSEY ROSE § | CIVIL ACTION NO. 4:19-CV-98 |

| | |
|---|---|
| CAROL ROSE and CAROL ROSE, INC., §<br>§<br>Appellants, §<br>§<br>§<br>versus §<br>§<br>LORI AARON, PHILLIP AARON, AARON §<br>RANCH, and JAY MCLAUGHLIN, §<br>§<br>Appellees. § | APPEAL OF ADVERSARY NO.<br>17-04104 |

| | |
|---|---|
| CAROL ALISON RAMSAY ROSE and §<br>CAROL ROSE, INC., §<br>§<br>Appellants/Cross-Appellees, §<br>§<br>versus §<br>§<br>EQUIS EQUINE, LLC, and ELIZABETH §<br>WESTON, §<br>§<br>Appellees/Cross-Appellants. § | APPEAL OF ADVERSARY NO.<br>17-04131 |

**MEMORANDUM AND ORDER**

Pending before the court is Appellants Carol Rose ("Rose") and Carol Rose, Inc.'s (collectively, the "Rose Parties") appeal from the bankruptcy court's Memorandum Opinion and Order entered September 30, 2020, and Memorandum Opinion and Order (Corrected) entered October 1, 2020, wherein the bankruptcy court awarded attorneys' fees and costs to Appellees

Equis Equine, LLC, and Elizabeth Weston ("Weston") (collectively, the "Weston Parties").[1] Having reviewed the bankruptcy court's orders, the record, the submissions of the parties, and the applicable law, the court is of the opinion that the bankruptcy court's orders should be affirmed in part and reversed in part.

I.    Background[2]

On October 3, 2013, the Rose Parties filed suit against the Aaron Parties in the 235th Judicial District Court of Cooke County, Texas ("Rose-Aaron State Court Lawsuit"), alleging various claims. In response, the Aaron Parties asserted various counterclaims against the Rose Parties. After the Weston Parties unsuccessfully attempted to intervene in the Rose-Aaron State Court Lawsuit, they filed suit in the 235th Judicial District Court of Cooke County, Texas ("Weston State Court Lawsuit"). In their lawsuit, the Weston Parties asserted claims against Lori and Phillip Aaron and the Rose Parties for common law fraud, fraudulent inducement, fraud by non-disclosure, negligent misrepresentation, violations of the Texas Theft Liability Act ("TTLA"),

---

[1] Also pending before the court is the Rose Parties' appeal from the bankruptcy court's Memorandum Opinion and Order entered September 30, 2020, awarding Appellees Lori Aaron, Phillip Aaron, Aaron Ranch, and Jay McLaughlin (collectively, the "Aaron Parties") attorneys' fees and costs. The court, in its August 25, 2021, Opinion, reversed the bankruptcy court's judgment in favor of the Aaron Parties and remanded the case to the bankruptcy court for further consideration. Because the Aaron Parties may not be deemed the prevailing parties after reconsideration by the bankruptcy court, this court need not address the attorneys' fees issues as related to them. *See* TEX. CIV. PRAC. & REM. CODE §§ 38.001, 134.005; *9503 Middlex, Inc. v. Cont'l Motors, Inc.*, 834 F. App'x 865, 874 (5th Cir. 2020) ("Because the district court's order rested on the plaintiffs' success on several issues we reverse today, we vacate the order and remand to the district court for a reevaluation of reasonable attorneys' fees."); *Adams v. Chen*, 830 F. App'x 727, 732 (5th Cir. 2020). Thus, the bankruptcy court's September 30, 2020, Memorandum Opinion and Order is vacated and remanded for further consideration.

[2] The court will address only the procedural background relevant to the attorneys' fees and court costs issues. The factual background giving rise to the parties' claims is addressed at length in the court's August 25, 2021, Opinion.

conspiracy, and aiding and abetting.[3] Additionally, the Weston Parties asserted claims against the Rose Parties, separately, for violations of Texas Business and Commerce Code § 2.328 and negligence. The Weston Parties sought approximately $450,000.00 in actual damages, as well as exemplary damages and attorneys' fees.

In September 2017, the Rose Parties filed for bankruptcy and removed the Rose-Aaron State Court Lawsuit and the Weston State Court Lawsuit to the bankruptcy court, commencing Adversary Proceeding Nos. 17-04104 and 17-04125, respectively. On December 19, 2017, the Weston Parties filed a complaint to determine dischargeability of the indebtedness owed by the Rose Parties and for equitable subordination of the Aaron Parties' claims, commencing Adversary Proceeding No. 17-4131. The Weston Parties and the Aaron Parties filed proofs of claim in the Rose Parties' bankruptcy cases based on their respective claims in the state court litigation. The bankruptcy court administratively consolidated the claim objections with the adversary proceedings.

After a nine-day trial, the bankruptcy court found in favor of the Weston Parties on their claims for violations of Texas Business and Commerce Code § 2.328, violations of Texas Administrative Code § 67.70, common law fraud, fraudulent inducement, fraud by non-disclosure, negligence, negligent misrepresentation, violations of the TTLA, equitable subrogation, and, as to Rose individually, non-dischargeability under 11 U.S.C. § 523(a)(2)(A). Accordingly, the bankruptcy court granted rescission of the sale of SHINERS LENA DOC and awarded the Weston

---

[3] Prior to trial, the Weston Parties withdrew their claim for violations of the Texas Deceptive Trade Practices Act.

Parties actual damages in the amount of $437,918.12, prejudgment interest, post-judgment interest, and attorneys' fees.

In accordance with the bankruptcy court's judgment, the Weston Parties filed a fee application on February 22, 2019, requesting an award of attorneys' fees and costs incurred by Davis & Santos, P.C. ("D&S"), and Baker Botts, LLP ("BB"), through February 1, 2019.[4] In support of the fee application, the Weston Parties submitted hundreds of pages of detailed, contemporaneous billing records and several sworn declarations of counsel explaining the legal services rendered and the tasks performed. On the eve of the fee hearing, the Weston Parties filed a supplemental application seeking additional fees incurred after February 1, 2019, and through the fee hearing. In total, Weston requested $1,537,142.44 in attorneys' fees and costs.

Subsequently, the Rose Parties objected to the Weston Parties' fee application and raised more than 1,900 specific objections to individual billing entries. The bankruptcy court held a hearing on the Weston Parties' fee application on April 24, 2019, and May 16, 2019. During the hearing, D&S's lead attorney, Jason Davis ("Davis"), testified regarding D&S's and BB's billing procedures. On September 30, 2020, the bankruptcy court issued its Memorandum Opinion and Order awarding the Weston Parties $1,074,305.19 in attorneys' fees and $45,247.06 in court costs. A day later, on October 1, 2020, the bankruptcy court issued its Memorandum Opinion and Order (Corrected), in which the bankruptcy court corrected "several clerical-type errors." The Rose Parties filed a notice of appeal on October 13, 2020, appealing from the bankruptcy court's

---

[4] The Weston Parties retained D&S, a San Antonio-based law firm, to represent them in connection with the Weston State Court Lawsuit. The Weston Parties also retained BB to represent them in bankruptcy matters and assist with the trial of their claims in bankruptcy court. D&S and BB jointly represented the Weston Parties throughout the litigation before the bankruptcy court.

Memorandum Opinion and Order entered September 30, 2020, and the Memorandum Opinion and Order (Corrected) entered October 1, 2020.

II.     Analysis

The Rose Parties appeal from the bankruptcy court's award of attorneys' fees and court costs to the Weston Parties. In their appeal, the Rose Parties complain that the bankruptcy court erred in awarding the Weston Parties over $1 million in attorneys' fees, approximately $125,000.00 in "fees for fees," and $45,247.06 in costs. The court reviews attorneys' fee awards for abuse of discretion; however, the court reviews the underlying legal conclusions that determine attorneys' fees *de novo*. *McBride v. Riley (In re Riley)*, 923 F.3d 433, 437 (5th Cir. 2019); *Gibbs & Bruns LLP v. Coho Energy Inc. (In re Coho Energy Inc.)*, 395 F.3d 198, 204 (5th Cir. 2004). A court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 301 (5th Cir. 2021); *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 321 (5th Cir. 2006) ("A court abuses its discretion when it acts 'in an unreasonable or arbitrary manner . . . without reference to any guiding rules and principles.'"); *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1266 (5th Cir. 1997) (holding that a bankruptcy court abuses its discretion if it premises its exercise of discretion on an erroneous conclusion of law).

  A.     Award of Attorneys' Fees

The bankruptcy court awarded the Weston Parties $1,074,305.19 in attorneys' fees that it characterized as reasonable and necessary. In their first issue, the Rose Parties contend that the bankruptcy court's fee award is premised on legal error because (1) the bankruptcy court failed to apply the lodestar method for calculating attorneys' fees and (2) the bankruptcy court's fee

5

award is otherwise unreasonable and excessive. The Rose Parties also challenge certain "supplemental fees" that they allege were incurred for unrecoverable work.

        1.    <u>The Lodestar Method</u>

The Rose Parties take issue with the bankruptcy court's application of the lodestar method for calculating attorneys' fees because, as they allege, it failed to find the reasonable rates and hours spent required for the calculation and discount for the "many" downward adjustments that it found appropriate. The Weston Parties argue that the bankruptcy court correctly applied the lodestar method. As previously noted, the court reviews attorneys' fees awards for abuse of discretion but reviews the underlying legal conclusions *de novo*. *In re Riley*, 923 F.3d at 437; *In re Coho Energy Inc.*, 395 F.3d at 204.

In federal court in the Fifth Circuit, an attorneys' fees award "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Chevron USA, Inc. v. Aker Maritime Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)); *accord Sabre Indus. v. Module X Sols., L.L.C.*, 845 F. App'x 293, 301 (5th Cir. 2021). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P. (In re ATOM Instrument Corp.)*, 969 F.3d 210, 216 (5th Cir. 2020), *cert. denied sub nom. Olstowski v. Petroleum Analyzer Co., L.P.*, 209 L. Ed. 2d 754 (May 17, 2021) (quoting *Mathis*, 302 F.3d at 461); *accord Trafficware Grp., Inc. v. Sun Indus., L.L.C.*, 749 F. App'x 247, 253 (5th Cir. 2018); *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014). Hence, when attorneys' fees are sought for state law claims brought in federal court, the

applicable state law governs. *Symetra Life Ins. Co.*, 775 F.3d at 248; *Chevron USA, Inc.*, 689 F.3d at 505; *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 263 (5th Cir. 1997).

Texas generally follows the "American Rule," which imposes the burden of attorneys' fees on the individual litigants. *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019); *see Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021); *Ferrari v. Aetna Life Ins. Co.*, 754 F. App'x 266, 269 n.5 (5th Cir. 2018). In Texas, this rule has been modified to permit the recovery of attorneys' fees when provided by statute or by contract between the parties. *JCB, Inc.*, 597 S.W.3d at 491; *see Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1038 (5th Cir. 2014) (citing *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d at 172); *Symetra Life Ins. Co.*, 775 F.3d at 248; *1/2 Price Checks Cashed v. United Auto. Ins. Co*, 344 S.W.3d 378, 382 (Tex. 2011). Thus, to secure an award of attorneys' fees from an opponent, the prevailing party must prove that: (1) recovery of attorneys' fees is legally authorized, and (2) the requested attorneys' fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019); *Dowtech Specialty Contractors, Inc. v. City of Weinert*, ___ S.W.3d ___, No. 11-18-00246-CV, 2020 WL 5740865, at *8 (Tex. App.—Eastland Sept. 25, 2020, pet. denied); *Toledo v. KBMT Operating Co., LLC*, 581 S.W.3d 324, 329 (Tex. App.—Beaumont 2019, pet. denied). Whether the law authorizes a party to recover attorneys' fees is a question of law; whereas, the reasonableness and necessity of the attorneys' fees sought is a question of fact. *Rohrmoos Venture*, 578 S.W.3d at 489.

Attorneys' fees are available by statute for claims arising under the TTLA. *See* TEX. CIV. PRAC. & REM. CODE § 134.005(b); *Transverse, L.L.C.*, 992 F.3d at 344; *ATOM Instrument Corp.*, 969 F.3d at 216. In the present case, the Weston Parties ultimately prevailed on their TTLA claim against the Rose Parties. Accordingly, the Weston Parties are authorized by statute to an award of necessary and reasonable attorneys' fees on that claim. *See* TEX. CIV. PRAC. & REM. CODE § 134.005(b) ("Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees.").

Texas courts employ the lodestar method to determine the reasonableness and necessity of fees. *Rohrmoos Venture*, 578 S.W.3d at 501; *Structural Metals, Inc. v. S & C Elec. Co.*, 590 F. App'x 298 (5th Cir. 2014); *Sims v. Sims*, 623 S.W.3d 47, 66 (Tex. App.—El Paso 2021, no pet.). Under the lodestar analysis, the "starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020) (quoting *Rohrmoos Venture*, 578 S.W.3d at 498); *accord Columbia Lloyds Ins. Co. v. Liberty Ins. Underwriters, Inc.*, No. 3:17-CV-005, 2019 WL 2296920, at *3 (S.D. Tex. May 30, 2019). The fact finder should consider: "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture*, 578 S.W.3d at 498; *accord Yowell*, 620 S.W.3d at 354; *Gerges v. Gerges*, 601 S.W.3d 46, 66 (Tex. App.—El Paso 2020, no pet.). "This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the

litigation process." *Rohrmoos Venture*, 578 S.W.3d at 498; *accord Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-076-H, 2021 WL 1398972, at *2 (N.D. Tex. Mar. 12, 2021); *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 704 (Tex. App.—Dallas 2019, no pet.). "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Rohrmoos Venture*, 578 S.W.3d at 499; *accord Salazar*, 2021 WL 1398972, at *2; *Barker v. Hurst*, ___ S.W.3d ___, No. 01-19-00529-CV, 2021 WL 2428981, at *5 (Tex. App.—Houston [1st Dist.] June 15, 2021).

The second step of the analysis allows the factfinder to adjust the base lodestar calculation up or down (apply a multiplier) if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.[5] *Rohrmoos Venture*, 578 S.W.3d at 500; *Barker*, 2021 WL 2428981, at *6. An enhancement or reduction of the base lodestar figure, however, cannot be based on a consideration that is subsumed in the first step of the lodestar method. *Rohrmoos Venture*, 578 S.W.3d at 500; *Tex. Mut. Ins. Co. v. DeJaynes*, 590 S.W.3d 654, 671 (Tex. App.—El Paso 2019,

---

[5] To determine the reasonableness of attorneys' fees sought, the trier of fact may consider the following factors: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *Rohrmoos Venture*, 578 S.W.3d at 494 (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)); *Fluorine On Call, Ltd.*, 380 F.3d at 867 (listing the factors the Texas Supreme Court utilizes to determine the reasonableness of attorneys' fees); *United My Funds, LLC v. Perera*, No. 4:19-CV-00373, 2020 WL 10708754, at *3 (E.D. Tex. Dec. 18, 2020); *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017).

pet. denied).  This two-step process results in a reasonable fee for the case.  *El Apple I*, 370 S.W.3d at 760; *Ralls v. Funk*, 592 S.W.3d 178, 187 (Tex. App.—Tyler 2019, pet. denied).

The Rose Parties contend that the bankruptcy court erred by not specifying the reasonable rate[6] and the reasonable hours[7] spent by the Weston Parties' counsel.  The Weston Parties argue that the Rose Parties mischaracterize *Rohrmoos* "as imposing a hyper-technical obligation on factfinders to specify a reasonable number of hours worked" and a reasonable rate.  *Rohrmoos* does not require the bankruptcy court to specify a reasonable hourly rate or state the reasonable number of hours expended.  *See Rohrmoos Venture*, 578 S.W.3d at 501.  Instead, the fact finder is required only to determine a base lodestar figure *based* on reasonable hours worked multiplied by a reasonable hourly rate.  *Id.*

Here, the bankruptcy court concluded:

Based on its review of the time records, its experience, and its knowledge of this case, the Court finds and concludes that 80% of the work by Weston's counsel was necessary and reasonable to advance the TTLA claim and, as such, a 20% reduction is a reasonable and a proper allocation in this case, which would reduce the requested fees to $1,074,305.19 ($1,342,881.49 multiplied by 80%).  In reaching this conclusion, the Court also took into account the nature and scope of the TTLA claim upon which Weston prevailed, the other claims asserted by Weston, the claims asserted against Weston by other parties, the lack of

---

[6] Specifically, the Rose Parties contend that because the bankruptcy court determined that the BB rates were not reasonable, it was required to state a reasonable rate.  Indeed, the bankruptcy court found that, with regard to B&B's rates, "Weston retained a Rolls Royce for a Ford pickup case."  Accordingly, the bankruptcy court expressly accounted for B&B's unreasonable hourly rates in its lodestar calculation.  As for D&S, the Rose Parties recognize that the bankruptcy court "found that D&S's rates were reasonable," and, apparently, do not challenge this finding.

[7] The Weston Parties provided the bankruptcy court "detailed, contemporaneous time records . . . , which contain thousands of entries by individual timekeepers."  The time entries "included details about the nature of the work, who did it at what rate, what day the work was performed, and the time worked."  This information provided the bankruptcy court with sufficient information to establish the nature of the work, who performed the work, when the work was performed, and the amount of hours expended.

10

segregation, the billing rates, the hours expended, the amount involved, the results obtained, the skill of Weston's counsel, and the specific objections raised by the Rose Parties.

As stated, the bankruptcy court established a lodestar of $1,074,305.19. Moreover, in reaching this conclusion, the bankruptcy court expressly considered the billing rates and the hours expended, among other factors. Importantly, the Rose Parties do not challenge the sufficiency of the evidence supporting the bankruptcy court's award.[8] Thus, in accordance with *Rohrmoos Venture*, the bankruptcy court determined a lodestar it considered to represent the reasonable and necessary fees after considering the relevant factors. The bankruptcy court was not required to do anything more. *See Rohrmoos Venture*, 578 S.W.3d at 501.

The Rose Parties further challenge the bankruptcy court's ultimate attorneys' fees calculation, arguing that the bankruptcy court "failed to discount for the many 'downward adjustments' it found appropriate." Specifically, the Rose Parties point to the bankruptcy court's determination that some of Rose's objections warranted "downward adjustments," including:

(1) block-billing precluded [the] court's reasonableness review in "many instances;"

(2) "D&S and BB failed to carry their burden to establish reasonableness" of their approximately $230,000 in fees billed for travel time;

(3) "much of" D&S paralegal's fees—totaling $107,814.58—were for "litigation support rather than substantive legal work;"

(4) "the total hour spent and attorneys' fees Weston is seeking are excessive in light of the results obtained;" and

---

[8] *Rohrmoos Venture* involved a challenge to the sufficiency of the evidence supporting the trial court's award of attorneys' fees. 578 S.W.3d at 484. Specifically, the Texas Supreme Court concluded that "there is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 499.

11

(5) BB's rates were excessive.

The Weston Parties argue that the bankruptcy court properly accounted for all relevant considerations.

The lodestar method provides a presumptively reasonable base figure that reflects most of the *Arthur Andersen* factors, but the factfinder may adjust this figure if other factors not considered in the base lodestar require it. *Rohrmoos Venture*, 578 S.W.3d at 496. The bankruptcy court expressly considered the objections raised by the Rose Parties when it calculated the lodestar. Moreover, in determining the attorneys' fees award, the bankruptcy court recognized: "While some of these factors support a downward adjustment, as discussed above, those adjustments are included in the 20% reduction for non-recoverable fees, and any further reduction would be an impermissible double discount." The bankruptcy court correctly declined to adjust the final calculation for considerations that it had already factored into its lodestar analysis. *See Rohrmoos Venture*, 578 S.W.3d at 500. Accordingly, the bankruptcy court did not err when it declined to further decrease the Weston Parties' recoverable fees for various objections by the Rose Parties.

### 2. Segregation of Fees

The Rose Parties argue that the bankruptcy court erred in awarding the Weston Parties "'Supplemental Fees' that were indisputably incurred for unrecoverable 'core' bankruptcy matters." Addressing this issue, the bankruptcy court found:

> The underlying bankruptcy case was nearing confirmation at the time this Court entered its original memorandum opinion and order in this adversary proceeding. Following the entry of this Court's memorandum opinion, BB's focus turned to the fee application. Weston submitted BB's time entries for this period with her supplemental application for fees. The Court, having reviewed BB's unredacted

> time entries from February 2019 through the end of April 2019, finds that, to the extent the Rose Parties object to this time on the grounds that it relates to core bankruptcy matters, the objection should be overruled.

If any attorneys' fees relate solely to a claim for which such fees are unrecoverable, they must be segregated from any recoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *accord Solferini Tr. of Corradi S.p.A. v. Corradi USA, Inc.*, ___ F. App'x ___, No. 20-40645, 2021 WL 3619905, at *3 (5th Cir. Aug. 13, 2021); *ATOM Instrument Corp.*, 969 F.3d at 217; *Eggemeyer v. Hughes*, 621 S.W.3d 883, 896 (Tex. App.—El Paso 2021, no pet.). "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313-14; *accord ATOM Instrument Corp.*, 969 F.3d at 217; *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017); *Eggemeyer*, 621 S.W.3d at 896. The need to segregate fees is a question of law, whereas the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 312-13; *Higgins v. Higgins*, 514 S.W.3d 382, 386 (Tex. App.—San Antonio 2017, pet. denied).

In support of their challenge, the Rose Parties direct the court to a document entitled "17.B Under Seal – Amended Redacted Copies of Fee Invoices from Baker Botts (Post-Judgment)." This document reflects that, contrary to the bankruptcy court's conclusion, several of the entries relate solely to "pure bankruptcy matters," including work performed on plan issues, the sale of the debtor's property, and other matters unrelated to the fee litigation. Thus, the bankruptcy court erred by concluding that these fees were recoverable. *See Chapa*, 212 S.W.3d at 313.

### 3. <u>Excessiveness of the Fee Award</u>

Finally, the Rose Parties contend that the "ultimate fee award of three times Weston's merits recovery is excessive and erroneous." "In deciding whether a fee is excessive, an appellate court is 'entitled to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges.'" *Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) (quoting *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000)) (applying Texas law); *accord Quanta Servs. Inc. v. Am. Admin. Grp. Inc.*, 384 F. App'x 291, 298 (5th Cir. 2008); *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *18 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (mem. op.); *Roach v. Turkia*, No. 05-18-00142-CV, 2019 WL 516742, at *4 (Tex. App.—Dallas Feb. 11, 2019, no pet.) (mem. op.). "[I]t is well established that the most critical factor in determining an award of attorneys' fees is the 'degree of success obtained' by the victorious plaintiffs." *Northwinds Abatement, Inc.*, 258 F.3d at 354 (quoting *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998)); *accord Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 803 (5th Cir. 2018); *Hawley v. Saul*, No. 3:19-CV-1959-BH, 2021 WL 3473268, at *2 (N.D. Tex. Aug. 5, 2021). "Moreover, the requested fees must bear a reasonable relationship to the amount in controversy or to the complexity of the case." *Northwinds Abatement, Inc.*, 258 F.3d at 354; *see Merge Off. Interiors, Inc. v. Alfa Adhesives, Inc.*, No. 3:19-CV-00336-M, 2020 WL 2115645, at *3 (N.D. Tex. May 3, 2020); *Xinyang Hualong Mins. Co. v. Delgado*, No. 4:16-CV-0104, 2017 WL 3236113, at *4 (S.D. Tex. July 28, 2017). An award, however, "is not excessive simply because it is disproportionate to the results obtained." *Bear Ranch, L.L.C.*, 885 F.3d at 803.

The Rose Parties recognize that the bankruptcy court expressly considered this factor in calculating the lodestar. Nevertheless, they argue that the "discount" was insufficient. The bankruptcy court awarded the Weston Parties actual damages totaling $437,918.12 and attorneys' fees totaling $1,074,305.19. Thus, the attorneys' fees award is slightly more than twice the damages award. Importantly, courts applying Texas law have affirmed fee awards that were far more disproportionate to the underlying damages award.[9]

In the case at bar, the Weston Parties asserted numerous claims against the Rose Parties and were successful on nearly all of them. Further, as the bankruptcy court noted:

> The discovery process was contentious and went on for years in state court. Although Weston agreed to be deposed several times, the other parties fought over depositions and the production of documents. The eventual document production was massive, and the documents produced to Weston required analysis by her attorneys. The litigation was novel inasmuch as Weston's claims relating to "puff" bidding and the dispersal sale are rarely litigated in Texas courts. Weston also had to defend herself from a claim by the Aarons for tortious interference with their relationship with Rose. Rose's decision to file for bankruptcy prior to trial added more complexity and necessitated Weston's retention of counsel with bankruptcy experience.

Moreover, Davis, counsel for the Weston Parties, testified at the fee hearing: "[T]he nature of the allegations of fraud auction were unique. And some of the UCC provisions that [the

---

[9] *See Northwinds Abatement, Inc.*, 258 F.3d at 354-55 (affirming trial court's award where "[t]he award of $712,000 as attorneys' fees . . . was more than three times the trebled damages award and more than nine times the actual damages"); *Young v. Sanchez*, No. 04-10-00845-CV, 2011 WL 4828021, at *6 (Tex. App.—San Antonio Oct. 12, 2011, no pet.) (mem. op.) (affirming attorneys' fees award of $9,201.57 on a damages award of $907.00); *Herring v. Heron Lakes Ests. Owners Ass'n, Inc.*, No. 14-09-00772-CV, 2011 WL 2739517, at *6 (Tex. App. Jan. 4, 2011, no pet.) (mem. op.) (affirming attorneys' fees award of $71,804.00 on a damages award of $700.00); *Padgett's Used Cars & Leasing, Inc. v. Preston*, No. 04-04-00579-CV, 2005 WL 2290249, at *5 (Tex. App.—San Antonio Sept. 21, 2005, no pet.) (mem. op.) (affirming attorneys' fees award that was "approximately six times the actual damages awarded in the judgment").

bankruptcy court] included in its order are unique and not commonly litigated. And so that led to complexity and added to the amount of research that was required." In addition, prior to the nine-day bench trial, the parties submitted a 92-page joint pre-trial order and a 294-page exhibit list, which identified 1,722 exhibits in total. After trial, the parties had to prepare oral closing arguments, draft proposed findings of fact and conclusions of law, and submit closing briefs.

The bankruptcy court considered the complexity of this case and the degree to which the Weston Parties were successful in calculating the lodestar. Weston prevailed on many of her claims and the case involved a litany of discovery and trial issues that affected the amount of time expended on this matter. Considering the record and viewing the matter in light of the testimony, the amount in controversy, the nature of the case, and the court's common knowledge and experience, the bankruptcy court did not abuse its discretion by declining to reduce the attorneys' fees award further to account for the degree of success obtained. Thus, Rose's objection to the excessiveness of the fee award is without merit.

B. Fees-for-Fees Award

In their second issue, the Rose Parties challenge the bankruptcy court's fees-for-fees award. In Texas, a claim for attorneys' fees is not an independent cause of action; rather, it is part of a successful party's remedy. *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 146 (Tex. App.—Dallas 2011, no pet.); *see Huff v. Fidelity Union Life Ins. Co.*, 312 S.W.2d 493, 501 (Tex. 1958). As such, "Texas courts permit a prevailing party to recover for time spen[t] in pursuit of attorney's fees." *United My Funds, LLC*, 2020 WL 10708754, at *3; *see KBIDC Invs.*,

*LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *20 (Tex. App.—Dallas Oct. 9, 2020, pet. filed) (mem. op.); *Cessna*, 345 S.W.3d at 146.

The Rose Parties argue that the bankruptcy court's fees-for-fees award "finds no basis in the lodestar method." The bankruptcy court apparently included the "supplemental" fees-for-fees award in its original fee award calculation. The bankruptcy court concluded: "Weston is entitled to recover the reasonable time her counsel spent to recover an award of attorneys' fees under Texas law. The Court has already reduced her requested supplemental award 20% for the reasons previously discussed. No further reduction is warranted under the circumstances of this case." Accordingly, it appears that the bankruptcy court applied the same lodestar analysis to Weston's requested fees-for-fees as it did for the remainder of Weston's requested fees. As discussed above, the bankruptcy court did not err in its application of the lodestar method to Weston's fee award. For the same reasons, the bankruptcy court did not err in its application of the lodestar calculation to Weston's fees-for-fees award.

The Rose Parties also contend that the bankruptcy court's fees-for-fees award is excessive. The bankruptcy court found that "[t]he pursuit in this case required Weston to respond to numerous global objections as well as thousands of objections to individual entries." Indeed, "[t]he Rose Parties raised more than 1,900 specific objections to individual billing entries of Weston's counsel." The bankruptcy court awarded the Weston Parties approximately 80% of their

17

requested fees, as well as 80% of their requested fees-for-fees. Thus, the fees-for-fees award is reflective of the degree of success obtained in the fee litigation and, therefore, is not excessive.[10]

Finally, the Rose Parties contend that the Weston Parties did not produce legally sufficient evidence to support "over $20,000 in 'estimated' 'supplemental' fees." At the fee hearing, the Weston Parties provided an exhibit titled "Amended Overall Summary of Attorneys' Fees Costs." As it relates to D&S, the summary includes a charge for $20,985.00 as an estimate for fees incurred through May 15, 2019. At the fee hearing, Davis testified:

> [T]here was time entered into our firm's accounting system through May that had not yet been invoiced in the amount of $9,385. There was time from Caroline Small from May 10th through 13th, 10 hours, $2,750. There was time of Ms. Green, May 12th through 13th, 10 hours for $1,250. There was time that I estimated for today and for yesterday, a total of 16 hours, so that would be $5,600. And then Ms. Green's time for yesterday and today, 16 hours, for a total of [$]2,000.

Accordingly, the record sufficiently supports the bankruptcy court's award of $20,985.00 in estimated fees. Thus, the bankruptcy court did not abuse its discretion in this regard.

C.   Costs Award

In their final issue, the Rose Parties argue that the bankruptcy court's costs and expenses award constitutes an abuse of discretion. The court reviews costs awards for abuse of discretion

---

[10] The Rose Parties' reliance on *Comm'r, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154 (1990), is misplaced. In *Jean*, the Supreme Court held: "Because *Hensley v. Eckerhart* . . . requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Jean*, 496 U.S. at 163 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Here, the bankruptcy court reduced the "supplemental" fees-for-fees award by the same percentage it reduced the primary fee award. Thus, the bankruptcy court excluded fees-for-fees to the extent that the Weston Parties ultimately failed to prevail in the fee litigation. Accordingly, the bankruptcy court did not award the Weston Parties fees incurred litigating unrecoverable fees.

and the underlying legal conclusions *de novo*. *In re Riley*, 923 F.3d at 437; *In re Coho Energy Inc.*, 395 F.3d at 204; *Moore*, 735 F.3d at 321. Federal law—not Texas law—governs the recovery of costs in a federal proceeding. 28 U.S.C. § 1920; *Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993) ("[F]ederal procedural law ordinarily governs the award of costs in diversity cases . . . [and] applying federal law does not violate the *Erie* doctrine."); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 689 (5th Cir. 1991) ("[N]o violence is done to the twin aims of the *Erie* doctrine by the application of federal procedural provisions to the taxing of costs."); 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2669 (4th ed. 2021) ("The award of costs is governed by federal law."); *see TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 475 (5th Cir. 2013); *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, No. 2:16-CV-538, 2021 WL 3144539, at *10 (S.D. Tex. July 26, 2021); *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 862 (E.D. Tex. 2012), *aff'd*, 550 F. App'x 897 (Fed. Cir. 2014). Here, the bankruptcy court erroneously applied Texas law regarding costs awards and, thus, committed legal error.

III.  Conclusion

Consistent with the foregoing analysis, as it relates to the Rose Parties' appeal of Adversary Case No. 17-04131, the bankruptcy court's attorneys' fees award with respect to the unsegregated amount awarded for pure bankruptcy matters and the costs award are REVERSED. The bankruptcy court's orders, in all other respects, are AFFIRMED. The case is REMANDED to the bankruptcy court for further consideration consistent with this opinion. With regard to the

Rose Parties' appeal of Adversary Case No. 17-04104, the bankruptcy court's order awarding attorneys' fees and costs is VACATED and REMANDED for further consideration.

SIGNED at Beaumont, Texas, this 21st day of September, 2021.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE